UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDITHA FLORES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15 C 02443 |
| ) | |
| PORTFOLIO RECOVERY ) | Judge Edmond E. Chang |
| ASSOCIATES, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Editha Flores claims that Portfolio Recovery Associates, LLC (which does business under the acronym "PRA") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, by communicating information about her consumer debt to a credit reporting agency without disclosing that the debt was disputed.[1] R. 1, Cmplt. ¶¶ 9-16.[2] After discovery, Flores moved for summary judgment, R. 38, Pl. Mot. Summ. J. PRA cross-moved for summary judgment, arguing that Flores lacked standing, that she had failed to establish elements of her FDCPA claim, and, in the alternative, that PRA's actions were bona fide error. R. 45, Def. Resp. and Cross-Mot. Summ. J. For the reasons stated below, summary judgment is granted to Flores. PRA's cross-motion for summary judgment is denied.

---

[1]The Court has federal-question jurisdiction over Flores's claims under 28 U.S.C. § 1331.
[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

## I. Background

PRA is in the business of collecting defaulted consumer debts. R. 38-2, PSOF ¶ 3.[3] In July 2012, PRA purchased a credit card obligation owed by Flores. R. 46, DSOF ¶ 1. Flores used the card in question to buy clothes. PSOF ¶ 6; PSOF Exh. G at 82:3-16. Sometime after PRA bought the credit card obligation, Flores met with and retained attorneys at the Debtors Legal Clinic, because she was worried that PRA would take legal action to collect the obligation. PSOF ¶ 8; PSOF Exh. G at 74:21-75:11. Flores reviewed her credit report with her attorneys, and told them that she thought the $748 balance claimed by PRA was not accurate. PSOF ¶ 10; PSOF Exh. G at 60:17-20.[4]

On July 3, 2014, Debtors Legal Clinic faxed PRA a letter about Flores's account. PSOF ¶ 11. The contents of the letter are undisputed. The letter informed PRA that Debtors Legal Clinic represented Flores, and stated: "This client regrets not being able to pay, however, at this time they are insolvent, as their monthly expenses exceed the amount of income they receive, and the amount reported is not

---

[3] Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "PSOF" for the Flores's Statement of Facts [R. 38-2], "DSOF" for PRA's Statement of Additional Facts [R. 46], "Pl. Resp. DSOF" for Flores's response to PRA's Statement of Facts [R. 60], and "Def. Resp. PSOF" for PRA's s response to Flores's Statement of Additional Facts [R. 46].

[4] PRA asserts that Flores has no "credible" evidence that she told her attorneys the amount claimed was inaccurate, R. 46, Def. Resp. PSOF ¶ 10, even though Flores testified in both her deposition and her declaration that she told the attorney the amount was incorrect. *See* PSOF Exh. B ¶¶ 4-6; PSOF Exh. G at 60:17-20 ("Q. Okay. So you talked about letting PRA know that the amount wasn't accurate. Can you tell me how you did that? A. I talked to my attorneys."). PRA tries to paint Flores's declaration as contradictory to her deposition testimony, Def. Resp. PSOF ¶ 10, but the two are not actually inconsistent. And of course, the Court cannot make credibility determinations at the summary judgment stage. *Omnicare, Inc. v. United Health Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). So PRA does not meaningfully contest that Flores told her attorneys that the amount claimed was inaccurate.

accurate." R. 49-1, DSOF Exh. C. PRA's records for Flores's account show that it received and processed the letter the next day.[5]

In December 2014 (months after PRA received the letter from Flores's lawyers), PRA provided information about Flores's obligation to Experian, a credit reporting agency. PSOF ¶ 15. PRA communicated a balance of $748 to Experian, but did not inform Experian that the amount of the obligation was disputed. PSOF ¶¶ 16-17.

## II. Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. United Health Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, affidavits, depositions, and other written forms of testimony can substitute for live

---

[5]In its response to Flores's statement of material facts, PRA attempts to dispute the contention that it received and processed the letter. *See* Def. Resp. PSOF ¶ 12. But PRA's own record citation demonstrates that it received and read the letter. An entry in PRA's account records for Flores's account dated June 4, 2014 notes receipt of the faxed letter, and that Debtors Legal Clinic now represented Flores. R. 49, PRA Sealed Exhibits at 00300.

3

testimony. *Malin v. Hospira, Inc.*, 762 F.3d 552, 554-55 (7th Cir. 2014). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Standing

As a threshold matter, the Court cannot hear this case unless Flores has Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). At minimum, Flores must show that she has (1) an injury in fact, (2) which is fairly traceable to the defendant's challenged conduct, and (3) which is likely to be redressed by a favorable judicial decision. *Id*. An "injury in fact" is an invasion of a legally protected interest which is concrete and particularized, and actual or imminent (as opposed to conjectural or hypothetical). *Lujan*, 504 U.S. at 560. PRA argues that Flores has not alleged an injury in fact that is sufficient to establish Article III standing. Def. Cross-Mot. Summ. J. at 17.

PRA and Flores stake out two extreme positions on standing, and neither is quite right. On one hand, PRA claims that Flores does not have standing because she seeks only statutory damages. Def. Cross-Mot. Summ. J. at 18. On the other hand, Flores argues that an FDCPA violation alone is enough to constitute an

4

injury in fact for standing purposes. R. 59, Pl. Resp. at 20. The truth is somewhere in the middle. In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court reiterated that a "bare procedural violation" is not necessarily an injury in fact. *Id*. at 1549. Article III requires a concrete injury even in the context of a statutory violation. *Id*. But *Spokeo* also affirmed that Congress has "the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id*. (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part)). The Supreme Court noted that Congress's judgment is "instructive and important," because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 136 S. Ct. at 1549. Crucially, *Spokeo* held that "the real risk of harm" from violation of a procedural right may be enough to establish injury. *Id*. *Spokeo* did *not* hold that a plaintiff must suffer measurable financial harm in order to establish an injury in fact. To the contrary, the Supreme Court reiterated that difficult-to-measure intangible harms may be concrete injuries in fact. *Id*; *see also Lane v. Bayview Loan Servicing, LLC*, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (discussing the distinction between actual damages and the concrete-harm requirement).

In this case, PRA disclosed Flores's debt to a credit reporting agency without reporting that the debt was disputed. Congress, with its unique fact-finding ability and sensitivity to the public interest, made the judgment that communicating credit card information without communicating that the debt is disputed is a "false, deceptive, or misleading representation" in violation of the FDCPA. 15 U.S.C.

5

§ 1692e(8). Reporting a debt on a credit report without noting a dispute poses a real risk of serious economic and reputation consequences. An incorrectly reported debt can be a "red flag" to "anyone who runs a background or credit check, including landlords and employers," and thus could be used to pressure a debtor to pay a debt without exploring their legal options. *See Phillips v. Asset Acceptance*, LLC, 736 F.3d 1076, 1082-83 (7th Cir 2013) (pending legal actions, even if not served, constituted a sufficient harm for standing); *see also Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016) ("[A]n inaccurate credit rating creates a substantial risk of harm"). This violation is not a harmless procedural misstep like disseminating an incorrect zip code; it is an error with easily appreciable real-world effects. *See Spokeo*, 136 S. Ct. at 1550. The substantial risk of harm from an inaccurate credit report is a concrete injury for Article III standing.

### B. FDCPA Violation

The FDCPA prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with collection of a debt. 15 U.S.C. § 1692e. "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," is a violation of § 1692e. 15 U.S.C. § 1692e(8). On the undisputed facts in the record, a reasonable jury must find that PRA violated § 1692e by communicating Flores's debt to Experian while failing to communicate that the debt was disputed.

6

### 1. Debt/Debt Collector

The FDCPA defines a "debt" as an obligation arising from a transaction primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5). Undisputed evidence shows that Flores's obligation to PRA was a "debt" under the meaning of the FDCPA. Flores testified in her deposition that she used the credit card to buy clothing. She did not buy anything for resale or for business. PSOF Exh. G at 82:3-16.[6] And PRA is clearly a "debt collector" within the meaning of the FDCPA, because its business is "the collection of [ ] debts." *See* 15 U.S.C. § 1692a(6); PSOF ¶ 3. Indeed, PRA does not seriously argue that it is not a debt collector; its only objection is that Flores's obligation was not a "debt," which is incorrect. Def. Resp. PSOF ¶ 3.

### 2. Communication of a Disputed Debt

Turning to the substance of the alleged violation, it is undisputed that PRA communicated Flores's debt to Experian without communicating that the debt was disputed. Def. Resp. PSOF ¶¶ 16-17. PRA tosses out a handful of arguments that Flores's debt was not a debt which was "known or which should be known" to be disputed, but all ultimately fail.

PRA argues in its briefs that it did not notice the language in Flores's letter disputing the amount owed. *See* Def. Reply at 12, 15. But this argument is not supported by any *facts* in the record. Flores deposed PRA's corporate representative,

---

[6]PRA's assertion that Flores "fail[ed] to cite any portion of the record" to show that the credit card was used for primarily personal, family, or household purposes is meritless. *See* Def. Resp. PSOF ¶ 6. Flores *did* cite the record, and the cited portion of her deposition clearly supports her factual claim. *See* PSOF ¶ 6.

7

Nyetta Jackson, but at no point did Jackson claim that the letter was not read or that the sentence about the disputed amount was somehow missed. Instead, Jackson insisted over and over that Flores's letter (and letters with identical language from other debtors) was processed correctly in accordance with PRA policy. *See, e.g.*, PSOF Exh. F at 106:10-108:13, 91:2-12, 92:3-6; 96:13-24, 101:5-10.

But even if PRA lacked actual knowledge that Flores's letter was disputing the amount of her debt, it would not change the result here. A debt collector violates the FDCPA by communicating credit information which "is known *or which should be known* to be false." 15 U.S.C. § 1692e(8). In this case, at the very least PRA *should have known* that the debt was disputed. The language in the letter is unambiguous: it states that "the amount reported is not accurate," clearly asserting a dispute as to the amount. DSOF Exh. C; *see also Gomez v. Portfolio Recovery Assoc.*, 2016 WL 3387158, at *3 (N.D. Ill. June 20, 2016) (letter with identical language made it "clear as day" that debtor was disputing the debt). PRA's argument that this language was "buried," Def. Cross-Mot. Summ. J. at 3, and "coyly hidden," *id*. at 9, is unpersuasive. The letter is only a few paragraphs long, and the disputed language is in the body of the letter in normal typeface. Anyone who read the letter would have seen the language stating that the amount is disputed. Nor does it matter that the letter was faxed to the general counsel's fax line rather than PRA's disputes fax line. *See* PSOF Exh. F at 127:3-7. Nothing about § 1692e(8) requires a dispute to be raised in any particular way. To be sure, there might be a factual scenario where the method of communicating the dispute is

unreasonable, such as sending a dispute letter to, say, the human resources department of a debt collector. But here the letter was sent to PRA's legal department. And in any event, it is clear that PRA read and processed the letter, whatever fax line it was sent to. *See* PRA Sealed Exhibits at 00300; PSOF Exh. F at 127:10-15.

PRA also argues that the statement in the letter that the "amount reported is not accurate" is insufficient to convey a dispute. Def. Cross-Mot. Summ. J. at 9. But this argument also fails. Although the FDCPA does not define what it means to "dispute" a debt for § 1692e(8) purposes, *See Eul v. Transworld Sys.*, 2017 WL 1178537, at *23 (N.D. Ill. Mar. 20, 2017), a number of cases from this District hold that a statement saying "the amount reported is not accurate" adequately disputes a debt. *See Emerson v. Fid. Capital Holdings, Inc.*, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015); *Bowse*, 218 F. Supp. at 751; *Gomez*, 2016 WL 3387158, at *3; *Paz v. Portfolio Recovery Assoc.*, 2016 WL 6833932, at *4-5 (N.D. Ill. Nov. 21, 2016); *Evans v. Portfolio Recovery Assoc.*, 2016 WL 6833930, at *2. This consensus is unsurprising: it is common sense that challenging the validity of the amount of a debt is a "dispute" in the ordinary sense of the word.

PRA seems to argue that a dispute must be *valid* in order to trigger the protection of § 1692e(8). *See* Def. Cross-Mot. Summ. J. at 8. But the language of the FDCPA does not support this reading. Section 1692e(8) does not specify that the debt collector must communicate "*valid* disputes" or "*reasonable* disputes" when it shares credit information. The fact that "a disputed debt is disputed" is enough. 15

U.S.C. § 1692e(8); *see also Hoffman v. Partners in Collections, Inc.*, 1993 WL 358158, at *4 (N.D. Ill. Sept. 14, 1993) ("There is no requirement that any dispute be "valid" for [§ 1692e(8)] to apply; only that there be a dispute."). It does not matter whether the $748 amount reported by PRA was actually accurate; all that matters for § 1692e(8) purposes is that Flores disputed the amount.[7]

### 3. Materiality

PRA argues that, even if it violated the letter of 15 U.S.C. § 1692e(8) by not alerting Experian of the dispute over the debt, the violation was not "material," and therefore PRA should escape liability. *See* Def. Cross-Mot. Summ. J. at 10-11. PRA's materiality argument misses the mark. It is true that there is a line of Seventh Circuit case law holding that a false or misleading statement must be "material" to be actionable under the FDCPA. *See, e.g., Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). This line of cases seeks to avoid imposing liability for minor mistakes or falsehoods which would be unlikely to influence a debtor's decisions. *Id*. at 757-758. But even if this case law somehow supported PRA's argument, it would not change the outcome in this case. The FDCPA *itself* unequivocally states that failure to communicate that a debt is disputed violates § 1692e. There is no mention of "materiality" as a requirement for liability; just a

---

[7]PRA also makes various confusing arguments about what Flores conveyed to her counsel at Debtors Legal Clinic before they sent the letter. *See, e.g.*, Def. Resp. and Cross-Mot. Summ. J. at 10; Def. Reply at 2. The idea seems to be that Flores did not actually dispute the debt, because her attorneys sent the letter without authorization. But Flores testified that she told her counsel she thought the amount reported by PRA was incorrect, and PRA does not meaningfully dispute this testimony. *See* note 3, *supra*. PRA's assertions that Flores never "conveyed a dispute to her attorney," Def. Reply at 2, are unsupported by fact, so even if PRA's argument had any legal merit, it would fail. And it's worth noting that PRA might have violated the FDCPA even if Flores had not told her attorneys the debt was disputed: § 1692e(8) does not specify that the *debtor* must be the one to dispute the debt instead of one of her agents.

10

plain statement that reporting credit information without communicating the dispute "is a violation." 15 U.S.C. § 1692e. The Seventh Circuit's gloss on the statute's "false, deceptive, or misleading" language was not meant to override an explicit statutory directive. The specific provision of the FDCPA itself controls here, with no need to inquire into materiality. *See Evans*, 2016 WL 6833930, at *3.

### C. Bona Fide Error Defense

PRA has one last argument: the bona fide error defense. *See* Def. Resp. and Cross-Mot. Summ. J. at 14. The FDCPA sets up a safe harbor for unintentional violations. A debt collector cannot be held liable if the collector can show, by a preponderance of evidence, "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). But this defense is limited to *factual* or clerical mistakes, and does not shield mistaken applications of the *law*. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010).

At the outset, it is unclear what "error" PRA is claiming took place when it processed Flores's letter. In its briefing, PRA vacillates between arguing that the letter sent by Flores was not a "dispute" as defined by the FDCPA and arguing that it mistakenly did not read the part of the letter indicating a dispute. *See* Def. Resp. and Cross-Mot. Summ. J. at 14-17. Both arguments fail, for different reasons. First, failing to recognize that the language of the letter qualifies as a "dispute" within the meaning of the FDCPA is a *legal* error, not a factual or clerical error, so the bona fide error defense is not available. *See Jerman*, 559 U.S. at 577. It would be another

11

thing if a PRA employee had skimmed the letter and accidentally missed the language disputing the amount of the debt; that would be a clerical or factual error, and could support a bona fide error defense. But no facts on the record support PRA's contention that this is what happened. PRA's *briefs* assert that it "missed the message," *see* Def. Reply at 12, but at the summary judgment stage a party needs to back up assertions with actual *evidence*. As discussed above, the testimony of PRA's corporate representative contradicts PRA's contention that the dispute language was accidentally missed—she insisted that the letter was processed correctly. What's more, PRA received at least six letters with identical language and failed to mark them as disputed, further undercutting PRA's late-in-the-game assertion that PRA employees carelessly misread Flores's letter. *See* PSOF Exh F at 90:19-91:12 (Acosta letter), 94:12-95-25 (Paz letter), 98:16-99:7 (Baranowski letter), 100:8-101:4 (Gomez letter), 103:5-104:6 (Bowse letter); 108:15-109:19 (Evans letter). Instead, this pattern simply confirms that PRA made a *legal* mistake in thinking that the letter did not qualify as a "dispute" over the debt. On this record, no reasonable jury could find that PRA has shown, by a preponderance of evidence (PRA bears the burden on the affirmative defense), that its mistake was an unintentional factual error.

But even if PRA had evidence that its treatment of Flores's letter was due to careless error rather than mistaken legal interpretation, it still would not succeed on its bona fide error defense. A defendant asserting the bona fide error defense must demonstrate that it maintained procedures reasonably calculated to avoid the

error. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). "Procedures" have been defined as "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *See Jerman*, 599 U.S. at 587 (quoting Webster's Third New Int'l Dictionary 1807 (1976)). A "thinly specified policy, allegedly barring some action but saying nothing about what action to take, is [not] an adequate procedure under § 1692k(c)." *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015) (internal quotation marks omitted).

PRA offers no evidence that it had procedures in place to prevent the *factual* error—careless reading—that it says took place in this case. Its "procedures" for evaluating letters boil down to telling employees to read the letters and evaluate them sensibly: exactly the kind of "thinly specified policy" that will not support a bona fide error defense. *See Leeb*, 806 F.3d at 900; PSOF Exh. F at 55:9-18, 56:1-57:16, 57:19-58:15 (describing PRA's method of processing letters). There is no evidence that PRA has measures in place to prevent careless misreading of letters, such as having employees periodically check one another's work, for example. True, there is at least some evidence that PRA employees are trained to recognize disputes. *See, e.g.*, DSOF Exh. F (Disputes Department Supplemental Training Manual). But, as previously discussed, miscategorizing a dispute letter as undisputed is a *legal* mistake outside the protection of the bona fide error defense. The dispute-training evidence is irrelevant to PRA's supposed *factual* mistake. PRA has not met its burden of producing enough factual material for a reasonable jury to find for PRA on its bona fide error defense.

## IV. Conclusion

For the reasons stated above, Flores is entitled to summary judgment on her FDCPA claim. The next step is damages and entering judgment. Based on what the parties did in the four near-identical cases,[8] the Court would expect a stipulated judgment on statutory damages. Perhaps the parties then could agree to postpone briefing on attorneys' fees and costs, and also file (after PRA files a notice of appeal) an agreed motion to stay the appeal during the pendency of the other four cases (it would be up to the Seventh Circuit, of course, to decide whether to grant the stay). This will be the topic of discussion at tomorrow's status hearing.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 29, 2017

---

[8] *Evans v. Portfolio Recovery Assocs.*, USCA No. 17-1773; *Bowse v. Portfolio Recovery Assocs.*, USCA No. 17-1866; *Gomez v. Portfolio Recovery Assocs.*, USCA No. 17-2756; and *Paz v. Portfolio Recovery Assocs.*, USCA No. 17-1860.